Robert Chalfant (State Bar No. 203051)
**LAW OFFICE OF ROBERT CHALFANT**
5701 Lonetree Blvd., Suite 312
Rocklin, California 95765
Telephone:   (916) 647-7728
Facsimile:   (916) 930-6093
Email:   robert@rchalfant.com

Attorney for Plaintiff
JANE DOE #3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| JANE DOE #3, <br><br> Plaintiff, <br><br> v. <br><br> STATE OF CALIFORNIA, CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION (CDCR), OFFICER GREG RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES, and DOES 1 to 20, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR VIOLATION OF CIVIL AND CONSTITUTIONAL RIGHTS** <br><br> **DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

This action arises from the sexual assault and rape of JANE DOE #3, a former inmate, by OFFICER GREG RODRIGUEZ, a correctional officer employed by the STATE OF CALIFORNIA and CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR"), at Central California Women's Facility ("CCWF") in Chowchilla, California.

1

## JURISDICTION & VENUE

1. This Court has original jurisdiction of the federal claims under 28 U.S.C.§ 1331 (in that they arise under the United States Constitution) and § 1343(a)(3) (in that the action is brought to address deprivations, under color of authority, of rights, privileges, and immunities secured by the United States Constitution). This Court has supplemental jurisdiction of the state law claims under 28 U.S.C. § 1367.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are located in the Eastern District of California and because the acts and/or omissions stated herein occurred in the Eastern District of California.

3. Intra-district venue is proper in the Fresno Division of the Eastern District of California pursuant to E.D. Cal. L.R. 120(d) because the claims asserted herein arise from acts and/or omissions which occurred in the County of Madera.

## EXHAUSTION

4. JANE DOE #3 submitted a timely Government Claim to the State of California regarding the claims alleged in this action on March 10, 2023. The claim was rejected by operation of law on April 24, 2023, as the State of California never issued a written rejection of JANE DOE #3's claim.

## PARTIES

5. Plaintiff JANE DOE #3 is a resident of the County of Stanislaus, California. Plaintiff JANE DOE #3 brings this action in her individual capacity on behalf of herself.

6. Defendant STATE OF CALIFORNIA, is, and at all times material herein employed all individual Defendants in this action, and all individual Defendants acted within the course and scope of their employment. Defendant STATE OF CALIFORNIA is properly named as a Defendant for Plaintiff's claims under Civil Code Section 52.1 (the Bane Act).

7. Defendant CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION ("CDCR") is and was an agency of the State of California. Defendant CDCR is properly named as a Defendant for Plaintiff's claims under Civil Code Section 52.1 (the Bane Act).

8.     Defendant ACTING WARDEN MICHAEL PALLARES ("PALLARES") was, at all times material herein, the Acting Warden of CCWF, located in Chowchilla, California. PALLARES was acting within the course and scope of his employment and under color of state law at all relevant times. PALLARES is sued in his individual capacity.

9.     OFFICER GREG RODRIGUEZ ("RODRIGUEZ") is, and at all times material herein was, a Correctional Officer employed by the State of California at CCWF and acting within the course and scope of his employment and under color of state law. RODRIGUEZ is sued in his individual capacity.

10.     Defendant DOES 1 to 20 are and/or were agents or employees of the State of California, California Department of Corrections and Rehabilitation, acting within the course and scope of their employment and under color of state law. Defendant DOES 1 to 20 true and correct names and identities are not currently known. Defendant DOES 1 to 20 are sued by their fictitious names and true and correct names and identities will be submitted when ascertained.

**GENERAL ALLEGATIONS**

11.     At all times relevant herein, all wrongful and unlawful acts described herein were performed under color of state law and/or in concert with or on behalf of those acting under the color of state law.

12.     In 2006, the California Department of Corrections and Rehabilitation ("CDCR"), adopted a Prison Rape Elimination Act Policy ("PREA"), which declares that CDCR has "zero tolerance for sexual violence, staff sexual misconduct and sexual harassment in its institutions," and that all "sexual violence, staff sexual misconduct, and sexual harassment is strictly prohibited." See Department of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.1 "Policy".

13.     CDCR's PREA definitions provide that the "legal concept of 'consent' does not exist between staff and offenders; any sexual behavior between them constitutes sexual misconduct and shall subject the staff member to disciplinary action and/or to prosecution under the law." See Section 54040.3, "Definitions".

14.     All correctional officers at CCWF are required to report "immediately and

3

confidentially to the appropriate supervisor any information that indicates an offender is being, or has been the victim of sexual violence, staff sexual misconduct, or sexual harassment." See Section 54040.7.

15.    State law also requires employees to report correctional staff misconduct. California Code of Regulations, Title 15, Section 3401.5(c) requires any employee who observes or receives "any incident, information or facts which would lead a reasonable person to believe sexual misconduct has occurred" to "immediately report the information or incident." Failure to do so can subject an employee to disciplinary action. Id.

16.    In 2005, the California legislature also enacted the Sexual Abuse in Detention Act ("SADEA") (See Penal Code Sections 2635-2643). California Penal Code Section 2636, subsection (b), requires that CDCR "ensure that staff members intervene when an inmate or ward appears to be the target of sexual harassment or intimidation."

**ALLEGATIONS AGAINST RODRIGUEZ**

17.    On or about May 11, 2022, JANE DOE #3, who was approximately thirty-four (34) years old, arrived at CCWF to complete a prison sentence after pleading no contest to a felony charge in Stanislaus County, California.

18.    JANE DOE #3 served her sentence and was released on or about February 8, 2023.

19.    While serving her custody sentence at CCWF, JANE DOE #3 met Correctional Officer RODRIGUEZ while passing through A Yard work exchange.

20.    RODRIGUEZ immediately began flirting with JANE DOE #3 and making inappropriate comments. For example, RODRIGUEZ informed JANE DOE #3 that she was very cute.

21.    JANE DOE #3 was uncomfortable with RODRIGUEZ's conduct, and this increased her fear and anxiety of being housed at CCWF. JANE DOE #3 left A Yard work exchange and hoped that she would not see RODRIGUEZ again.

22.    The next day, JANE DOE #3 heard her name called over the loud-speaker; "[JANE DOE #3], go to work exchange." JANE DOE #3 did as directed and proceeded to work exchange where RODRIGUEZ was waiting for her.

4

23.    RODRIGUEZ escorted JANE DOE #3 behind a curtain where inmates are searched near an X-ray machine. RODRIGUEZ immediately shoved his hands down her prison issued pants and began grabbing and touching her vagina.

24.    JANE DOE #3 started crying, and pleading with RODRIGUEZ, saying "No" Stop! Please stop!" and repeatedly asked "what are you doing?" RODRIGUEZ did not stop and continued his sexual assault of JANE DOE #3 at work exchange. JANE DOE #3 was informed by investigators employed by CDCR that they have video of RODRIGUEZ with JANE DOE #3 at work exchange on this date.

25.    RODRIGUEZ told JANE DOE #3 that he wanted her to perform oral sex and that if she did not, he would fabricate false Rules Violations Reports ("115's"). These 115's would "get her in trouble" according to RODRIGUEZ and would "make prison very difficult" for her. JANE DOE #3 begged RODRIGUEZ to "Stop!" and instead of stopping, RODRIGUEZ pushed JANE DOE #3 down to her knees and forced her to give him oral sex against her will and without her consent.

26.    JANE DOE #3 returned to her cell in tears after being sexually assaulted by Officer Rodriguez at work exchange. JANE DOE #3 felt hopeless and worthless after being sexually assaulted by an officer employed by CDCR. She was scared, confused, angry and had no one to turn to as she did not know anyone at CCWF.

27.    RODRIGUEZ had told JANE DOE #3 that he had worked at CCWF for many years. JANE DOE #3 was afraid that if she told anyone employed at CCWF, they could be friends with and tell RODRIGUEZ, and he would retaliate.

28.    JANE DOE #3 also knew that a 115 Rules Violation Report by RODRIGUEZ would extend her period of confinement by 6 months, eliminate any privileges she was entitled to, and possibly result in placement in solitary confinement.

29.    Within a period of days or weeks, JANE DOE #3 was again summoned over the loud-speaker to "report to BPH." JANE DOE #3 did as ordered and went to BPH where RODRIGUEZ was waiting for her.

30.    RODRIGUEZ introduced JANE DOE #3 to the Work Assignments Secretary and

5

a Lieutenant that worked at BPH upon arrival. RODRIGUEZ escorted JANE DOE #3 into the BPH Hearing Office and told JANE DOE #3 that there were no cameras in the room.

31.    JANE DOE #3 was crying and very emotionally upset as she had just found out that her daughter's father had died. RODRIGUEZ began hugging JANE DOE #3 and telling her that he was sorry.

32.    RODRIGUEZ went from pretending that he cared about her loss of a close family member, to getting very rough, physically grabbing JANE DOE #3, and trying to kiss her against her will.

33.    JANE DOE #3 told RODRIGUEZ repeatedly that "I do not want to do this, please stop!" RODRIGUEZ said "ok" and told JANE DOE #3 to clean the office.

34.    RODRIGUEZ also said that "one of the perks of being here and working for me is that I can let you use the phone." RODRIGUEZ sat JANE DOE #3 down at a desk and allowed her to use the phone to call several close friends and family members affected by the recent passing of her daughter's father.

35.    After making those calls, JANE DOE #3 did as ordered and began cleaning the office. After cleaning the office, RODRIGUEZ started trying to kiss JANE DOE again, even though she was still upset and crying over the loss of her daughter's father.

36.    RODRIGUEZ did not care that JANE DOE #3 was extremely upset and emotionally distraught over losing the father of her daughter.

37.    RODRIGUEZ grabbed JANE DOE #3, bent her over a chair in the office, ripped down her prison issued pants and underwear, and began having sexual intercourse with JANE DOE #3 against her will and without her consent.

38.    Eventually, in what seemed like hours, RODRIGUEZ finished raping JANE DOE #3 and ejaculated on the floor.

39.    RODRIGUEZ informed JANE DOE #3 that if she told anyone about what he had done, he would write up false 115's, and get her placed in solitary confinement/Administrative Segregation.

40.    RODRIGUEZ also informed JANE DOE #3 that no one would believe her as she

6

was an inmate, and he was a correctional officer that had been employed by CDCR for over twenty years.

41.     JANE DOE #3 did not consent to being touched, groped, molested, fondled, having oral sex or sexual intercourse with RODRIGUEZ.

42.     JANE DOE #3 was in fear for her own safety as she believed that RODRIGUEZ would have her assaulted by other inmates or staff if she did not comply.

43.     After being raped by RODRIGUEZ, JANE DOE #3 returned to her cell. JANE DOE #3 was severely traumatized by the events occurring in prison and could not understand how other guards and staff could allow RODRIGUEZ to summon female inmates to BPH and rape them.

44.     JANE DOE #3 will likely need counseling for life to address the psychological trauma inflicted by RODRIGUEZ, and those individuals who failed to protect her from a serial rapist in prison.

45.     Unknown correctional officers and supervisors employed by CDCR knew that RODRIGUEZ was a serial rapist, was summoning multiple women to BPH to sexually assault them and failed to report his misconduct. Some of these officers were sexually assaulting other female inmates at the same time as RODRIGUEZ and there are currently multiple investigations into staff sexual misconduct on-going at CCWF.

46.     At least 15 other officers, including two sergeants and a lieutenant, are alleged to have been involved in staff sexual misconduct with inmates in the last five to ten years.

47.     JANE DOE #3 was severely traumatized after being raped and sexually assaulted by RODRIGUEZ. JANE DOE #3 will need counseling for life to address the psychological trauma inflicted by RODRIGUEZ, and the repeated failure of those individuals employed by the STATE OF CALIFORNIA and CDCR, including PALLARES, who failed to protect her from a serial rapist employed by the State of California.

**ALLEGATIONS AGAINST PALLARES, CDCR AND THE STATE OF CALIFORNIA**

48.     RODRIGUEZ used the BPH Hearing Office to sexually assault and/or rape multiple women at CCWF.

7

49.     After two victims of RODRIGUEZ came forward and filed lawsuits in December of 2022, (*Doe v. Rodriguez, et al.*, 1:22-cv-01569-JLY-SAB, and *Roe v. Rodriguez* et al., 1:22-cv-01574-JLY-SAB), CDCR and PALLARES belatedly attempted to get in front of the allegations and for the first time publicly acknowledged that RODRIGUEZ was sexually assaulting female inmates at CCWF.

50.     On December 28, 2022, CDCR and PALLARES issued a press release stating that CDCR's Office of Investigative Affairs opened an investigation in July of 2022 "after discovering information that suggested sexual misconduct was occurring between Rodriguez and incarcerated women at CCWF."

51.     CDCR and PALLARES stated in their Press Release that CDCR "has identified more than 22 potential victims" of RODRIGUEZ and that CDCR has referred their investigation of RODRIGUEZ to the Madera County District Attorney. RODRIGUEZ has since been criminally charged with over 90 felony charges and his bail is currently set at $7,800,000. JANE DOE #3 is one of the charged victims of RODRIGUEZ's sexual misconduct at CCWF.

52.     Even though PALLARES, CDCR and the STATE OF CALIFORNIA "discovered information" in July of 2022 that "suggested sexual misconduct was occurring between Rodriguez and incarcerated women at CCWF," CDCR, PALLARES and the STATE of CALIFORNIA did not remove RODRIGUEZ from working at CCWF or working at BPH in an unmonitored area, and he continued to rape and sexually assault female inmates at BPH through August of 2022. See, *Doe v. Rodriguez*, et al., 1:22-cv-01569-JLY-SAB; and, *People v. Rodriguez*, (MCR077701), counts 65-76.

53.     PALLARES served as Acting Warden of CCWF throughout JANE DOE #3's period of incarceration and was responsible as the "Hiring Authority" for initiating Internal Affairs Investigations, and for the disciplining and dismissal of staff. See Cal. Code of Regs. Title 15, § 3392(a)(11).

54.     CDCR's PREA policy required that PALLARES be "immediately notified" of staff sexual misconduct via the Watch Commander. Department of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.8.1 "Custody Supervisor Responsibilities".

8

55.    The Prison Rape Elimination Act policy and CDCR both state that there is a zero-tolerance policy towards staff sexual misconduct in California prisons. However, during his time as Acting Warden and "Hiring Authority" PALLARES repeatedly ignored past and present PREA complaints alleging staff sexual misconduct by correctional officers, including RODRIGUEZ, and took no action to protect female inmates at CCWF.

56.    Correctional Staff had complained about sexual misconduct by RODRIGUEZ prior to JANE DOE #3 being raped and sexually assaulted by RODRIGUEZ.

57.    In 2014, a correctional officer witnessed RODRIGUEZ preying upon a female inmate while RODRIGUEZ was assigned to C Yard at CCWF.

58.    RODRIGUEZ followed the same plan he has used for the last ten years to victimize female inmates, and this involved calling housing staff and directing that they send him the female inmate that he intended to rape and/or sexual assault.

59.    In 2014, RODRIGUEZ called housing staff and directed the officer to send a female inmate to him at C Yard work exchange even though he was not assigned to C Yard work exchange.

60.    The correctional officer witnessed RODRIGUEZ suspiciously lurking near C Yard work exchange for approximately ten minutes waiting for the female inmate to arrive.

61.    The correctional officer called RODRIGUEZ and confronted him as to why he would summon the female inmate to C Yard work exchange since he did not work at C Yard work exchange. RODRIGUEZ stated that he just wanted to talk with the inmate.

62.    After witnessing RODRIGUEZ engaging in conduct prohibited by CCWF's PREA policy, and in order to comply with the PREA policy provisions regarding the reporting of suspected misconduct, the correctional officer prepared and submitted a written letter/complaint alleging staff sexual misconduct by RODRIGUEZ.

63.    The correctional officer submitted the PREA complaint to their supervisor and alerting CCWF and the STATE OF CALIFORNIA to the fact that RODRIGUEZ was engaged in suspected staff sexual misconduct with the female inmate.

64.    It was also documented in the C Yard logbook that RODRIGUEZ was engaged in

9

suspected sexual misconduct with the female inmate.

65.     The complaint was investigated by a Lieutenant at CCWF. The Lieutenant informed the correctional officer that he had also received an anonymous letter from a second correctional officer that alleged that RODRIGUEZ was engaged in staff sexual misconduct with the female inmate summoned to C Yard work exchange.

66.     CCWF interviewed RODRIGUEZ and RODRIGUEZ's friend and co-worker, Correctional Officer Santos, about the allegations and both officers denied everything. Plaintiff is informed and believes that Officer Santos has since left CCWF after being accused of alleged PREA misconduct.

67.     CDCR and the STATE OF CALIFORNIA failed to take any action against RODRIGUEZ even though multiple staff members/correctional officers were submitting written complaints regarding staff sexual misconduct committed by RODRIGUEZ in 2014.

68.     The female inmate identified by correctional officers as being subjected to staff sexual misconduct by RODRIGUEZ in 2014 was raped and victimized by RODRIGUEZ.

69.     The female inmate is now identified as Jane Doe #6 in the criminal complaint filed against RODRIGUEZ in Madera County Superior Court Case No. MCR077701.

70.     If CDCR and the STATE OF CALIFORNIA had properly investigated the prior complaints by staff against RODRIGUEZ in 2014, Jane Doe #6 could have been protected, and the twelve charged counts of rape and forcible oral copulation that occurred in 2014 may have been prevented.

71.     According to the felony complaint, RODRIGUEZ committed these acts of staff sexual misconduct in 2014 against Jane Doe #6 in the following locations: "behind work exchange;" "in the substance abuse program building;" "in the main yard clinic;" and in the "C facility clinic." Correctional Officers at CCWF turned a blind eye to RODRIGUEZ's sexual misconduct at CCWF.

72.     PALLARES was employed as a correctional officer and worked with RODRIGUEZ in 2014 at CCWF.  PALLARES knew and was aware in 2014 that staff and inmates had accused RODRIGUEZ of staff sexual misconduct at C Yard "behind work

10

exchange." PALLARES was friends with RODRIGUEZ and frequently referred to him by his nickname of "G Rod."

73. PALLARES was aware of the 2014 staff complaints of sexual misconduct against RODRIGUEZ. PALLARES was also aware and had knowledge of staff sexual misconduct complaints submitted against RODRIGUEZ after 2014 as he was required to review those complaints as Chief Deputy Warden and Acting Warden after receiving promotions to those positions and assuming the role of Hiring Authority.

74. Inmates had complained to supervisory staff about RODRIGUEZ's sexually harassing and assaultive behavior prior to JANE DOE #3 being raped by RODRIGUEZ, and these complaints were forwarded by the Watch Commander to PALLARES as he was solely responsible for initiating Internal Affairs investigations once he became Acting Warden of CCWF in 2019. PALLARES routinely ignored these complaints and failed to initiate Internal Affairs investigations.

75. One inmate filed multiple grievances alleging that female inmates were being forced to engage in sexual acts with correctional officers. This inmate had information that RODRIGUEZ was forcing female inmates to engage in sexual acts. These grievances were submitted prior to JANE DOE #2 being raped and sexually assaulted by RODRIGUEZ.

76. These grievances alleging that female inmates were being forced to engage in sexual acts were forwarded and brought to the attention of PALLARES by the Watch Commander, as required. PALLARES ignored these allegations and declined to initiate Internal Affairs investigations to discover which staff were responsible and which inmates were being victimized by staff.

77. PALLARES had received additional complaints from other inmates alleging PREA violations by RODRIGUEZ prior to JANE DOE #2 being raped and sexually assaulted by RODRIGUEZ.

78. The lead investigator at CCWF's Office of Internal Investigations has confirmed that PREA complaints had been received regarding RODRIGUEZ prior to JANE DOE being raped and sexually assaulted by RODRIGUEZ.

11

79.    These prior PREA complaints regarding RODRIGUEZ were all forwarded to PALLARES by the Watch Commander, as required. PALLARES took no action on these complaints, did not initiate Internal Affairs investigations, and allowed RODRIGUEZ to continue to work at CCWF and have access to unmonitored locations within CCWF such as the BPH Hearing Office.

80.    RODRIGUEZ frequently requested overtime at BPH to commit these rapes and sexual assaults, even though he was not assigned to work at BPH.

81.    RODRIGUEZ's requests for overtime at BPH were granted by PALLARES, even though prior complaints of sexual harassment and sexual assault against RODRIGUEZ had been alleged by female inmates in the BPH Hearing Office at CCWF and PALLARES knew and was aware of these complaints.

82.    Female inmates at CCWF had complained to supervisors and correctional officers that RODRIGUEZ was engaging in sexual harassment, sexual assault and rape at the BPH Hearing Office, prior to JANE DOE #3 being raped by RODRIGUEZ.

83.    PALLARES knew and was aware that female inmates had complained of sexual harassment, sexual assault and rape by RODRIGUEZ at the BPH Hearing Office and failed to investigate the claims against RODRIGUEZ, remove RODRIGUEZ from the BPH assignment or install a video system in the Hearing Office to monitor that location.

84.    Even though PALLARES and other supervisory staff were aware of these allegations, PALLARES failed to review, or have an Internal Affairs investigator review the hours of video recordings that showed female inmates entering the Hearing Office with RODRIGUEZ in 2021, which corroborated the female inmates' complaints.

85.    PALLARES failed to initiate an Internal Affairs investigation until July of 2022,

12

which prevented Internal Affairs from interviewing over 20 victims of RODRIGUEZ's sexual misconduct and prevented Internal Affairs from reviewing the hours of video footage which corroborated the female inmates claims and which showed RODRIGUEZ taking female inmates into the BPH Hearing Office.

86.     CDCR, PALLARES and unknown supervisors failed to conduct any inquiry into why RODRIGUEZ was frequently alone with female inmates in this unmonitored location, even though they had complaints from female inmates that CDCR's PREA policies were being violated by RODRIGUEZ at the Hearing Office.

87.     PALLARES took no action on these complaints by female inmates and allowed RODRIGUEZ to continue his unmonitored use of the Hearing Office and allowed RODRIGUEZ the continued ability to use the BPH Hearing Office to accrue overtime pay.

88.     PALLARES intentional refusal to investigate and stop sexual misconduct by RODRIGUEZ at CDCR is not surprising given that PALLARES had recently been named as a defendant in two civil lawsuits alleging sexual harassment, sexual battery and assault against PALLARES while he was employed at CCWF and is currently under investigation for sexual misconduct.

89.     In *Escobedo v. Pallares*, et al., (Case No. MCV084010), filed in Madera County Superior Court in August of 2020, Plaintiff Escobedo alleged that PALLARES engaged in sexual harassment and that PALLARES "was making unwanted sexual advances towards Plaintiff again and again even though she told him to stop."

90.     Plaintiff Escobedo also alleged that PALLARES was "engaging in affairs with subordinate female employees" of CDCR at CCWF.

91.     Plaintiff Escobedo had worked at CDCR for over twenty years and had been promoted to the rank of Warden at CDCR in 2017. PALLARES replaced Escobedo as Acting

13

Warden in 2019.

92.   CDCR and the State of California knew of these allegations against PALLARES as they had been served with the *Escobedo* lawsuit prior to JANE DOE #3 being raped by RODRIGUEZ but failed to conduct any inquiry or investigation into PALLARES and allowed him to remain as Acting Warden even though they were aware of sexual misconduct allegations against PALLARES.

93.   In *Galvani v. Pallares*, et al., (Case No. MCV086026) filed in Madera County Superior Court in September of 2021, Plaintiff, a subordinate female employee of PALLARES at CCWF, alleged that PALLARES committed sexual harassment, sexual battery and assault at CCWF.

94.   Specifically, Plaintiff alleged that she was forced to perform nonconsensual sexual acts with PALLARES at CCWF and because PALLARES had access to internal videorecording and monitoring, he could "hunt Plaintiff down and force her to have sex with him in places the recording would not reach." PALLARES, like RODRIGUEZ, was allegedly engaging in sexual misconduct at CCWF, which was prohibited by CCWF's PREA policy. CDCR did not initiate an investigation into PALLARES until 2023.

95.   The *Galvani* lawsuit was filed prior to JANE DOE #3 being raped by RODRIGUEZ, and CDCR and the STATE OF CALIFORNIA knew of these allegations but failed to remove PALLARES from his position as Acting Warden to protect female subordinate employees and inmates.

96.   PALLARES's actions and sexual misconduct at CCWF was common knowledge amongst correctional staff, including RODRIGUEZ, as correctional staff knew and were aware of the lawsuits against PALLARES alleging sexual misconduct by the prior Warden and a subordinate employee.

14

97.    PALLARES's misconduct promoted a culture of sexual misconduct at CCWF which emboldened RODRIGUEZ as he believed that nothing would happen to him since no action was taken against PALLARES by CDCR or the STATE OF CALIFORNIA.

98.    If PALLARES had initiated Internal Affairs investigations into the prior PREA complaints, Internal Affairs would have been able to review and obtain the videos of "more than 22 women" being summoned to locations by RODRIGUEZ and RODRIGUEZ could have been removed from his position of employment at CCWF.

99.    If RODRIGUEZ had been investigated and disciplined in 2014, JANE DOE #3, and approximately twenty other women, would not have been raped and/or sexually assaulted by RODRIGUEZ.

100.    JANE DOE #3 has suffered severe and extreme mental and emotional distress as a result of RODRIGUEZ's actions and the failure of PALLARES, supervisors, other correctional officers and the STATE OF CALIFORNIA to protect her from a serial rapist employed by CDCR.

101.    JANE DOE #3 will continue to suffer mental and emotional distress, anguish, embarrassment, and humiliation for the rest of her life.

## VI. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**"Cruel and Unusual Punishment/Excessive Force"**

**(42 U.S.C. § 1983)**

*Against Defendant RODRIGUEZ*

102.    Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 101, as though fully set forth herein.

103.    Defendant RODRIGUEZ deprived JANE DOE #3 of her rights under the Eighth Amendment to the U.S. Constitution, when he sexually harassed, sexually assaulted and raped

JANE DOE #3 while she was serving a prison sentence at CCWF.

104.    RODRIGUEZ used and abused his position of authority as a correctional officer employed at CCWF to control JANE DOE #3's movements within CCWF and at all times acted under color of law and without any penological justification.

105.    RODRIGUEZ touched JANE DOE #3 in a sexual manner and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of humiliating, degrading and demeaning JANE DOE #3.

106.    As a direct and proximate result of said acts by RODRIGUEZ, JANE DOE #3 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

107.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**SECOND CLAIM FOR RELIEF**

**"Right to Bodily Integrity"**

**(42 U.S.C. § 1983)**

*Against Defendant RODRIGUEZ*

108.    Plaintiff JANE DOE #2 re-alleges and incorporates by reference paragraphs 1 through 107, as though fully set forth herein.

109.    Defendant RODRIGUEZ deprived JANE DOE #3 of her rights under the Fourteenth Amendment to the U.S. Constitution, when he sexually harassed, sexually assaulted and raped JANE DOE #3 while serving a prison sentence at CCWF.

110.    RODRIGUEZ used and abused his position of authority as a correctional officer employed at CCWF to control JANE DOE #3's movements within CCWF and at all times acted under color of law and without any penological justification.

111.    RODRIGUEZ touched JANE DOE #3 in a sexual manner and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of

16

humiliating, degrading and demeaning JANE DOE #3.

112. As a direct and proximate result of said acts by Defendant RODRIGUEZ, JANE DOE #2 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

113. Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**THIRD CLAIM FOR RELIEF**

**"Failure to Protect"**

**(42 U.S.C. § 1983)**

*Against ACTING WARDEN MICHAEL PALLARES, DOES 1 to 20*

114. Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 113, as though fully set forth herein.

115. The aforementioned acts and/or omissions of ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 in failing to properly investigate prior claims of sexual harassment, sexual assault and rapes committed against female inmates by RODRIGUEZ were done with clear disregard for JANE DOE #3's rights under the Eighth Amendment.

116. ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 made intentional decisions with respect to RODRIGUEZ that allowed him to use and have unmonitored access to the BPH Hearing Office, even allowing RODRIGUEZ to use this location to obtain overtime pay and benefits.

117. These decisions and conditions put JANE DOE #3 at substantial risk of suffering serious harm and she in fact suffered serious harm.

118. Defendant ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved in light of the obvious consequences.

119. By not taking such measures, Defendant ACTING WARDEN MICHAEL PALLARES caused JANE DOE #3's injuries.

120. As a direct and proximate result of said acts and/or omissions by Defendants ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20, JANE DOE #3 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

121. The aforementioned acts and/or omissions of said Defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of JANE DOE, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof.

**FOURTH CLAIM FOR RELIEF**

**"Supervisory Liability"**

**(42 U.S.C. § 1983)**

*AGAINST ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20*

122. Plaintiff JANE DOE re-alleges and incorporates by reference paragraphs 1 through 121, as though fully set forth herein.

123. Supervisory Defendants ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 were acting under color of state law during all times relevant to this action.

124. By incarcerating, taking custody and assuming control over JANE DOE #3, ACTING WARDEN MICHAEL PALLARES and the supervisory DOE defendants created a special relationship that required Defendants to assume affirmative duties of care and protection.

125. ACTING WARDEN MICHAEL PALLARES and the supervisory DOE defendants, DOES 1 to 20, recklessly and with conscious disregard to known and obvious risks to JANE DOE #2's safety, failed to protect JANE DOE #3 and other female inmates from pervasive sexual assaults and rapes by RODRIGUEZ in the following ways:

a. by continuing to employ RODRIGUEZ and other prison personnel in positions that allowed unsupervised and unmonitored access to female inmates even though

18

ACTING WARDEN MICHAEL PALLARES and other supervisory defendants had knowledge that RODRIGUEZ and other correctional officers were committing sexual harassment, sexual assault and rape of female inmates in unmonitored locations;

b.    by failing to take any precautionary measures to address the known and ongoing problem of sexual abuse and misconduct by correctional officers at CCWF;

c.    by failing to initiate Internal Affairs investigations into PREA allegations against RODRIGUEZ;

d.    by failing to install and maintain a video surveillance system in each and every location where female inmates are present and that correctional officers have access to;

e.    by failing to review and have their subordinates review live video feeds of locations through CCWF that have video surveillance to monitor whether RODRIGUEZ or other correctional officers are taking female inmates into unmonitored locations;

f.    by failing to properly train, supervise, investigate and discipline RODRIGUEZ even though ACTING WARDEN MICHAEL PALLARES and other supervisors knew that female inmates had made complaints against RODRIGUEZ that indicated he was violating CDCR's PREA policies while employed at CCWF;

g.    by failing to investigate and terminate RODRIGUEZ prior to JANE DOE #2 being raped and sexually assaulted, even though female inmates had submitted PREA complaints against RODRIGUEZ alleging sexual misconduct committed by RODRIGUEZ at CCWF prior to JANE DOE #2's rape and sexual assault;

h.    by allowing RODRIGUEZ to be assigned to and work overtime at BPH even though female inmates had complained of sexual misconduct and sexual assaults at BPH, and ACTING WARDEN MICHAEL PALLARES and other supervisory defendants knew that BPH allowed RODRIGUEZ to have unmonitored access to female inmates at CCWF; and,

i.    by approving RODRIGUEZ's requests for overtime at the BPH office, even though PALLARES had received prior PREA complaints from female inmates that RODRIGUEZ was using the unmonitored BPH to sexually assault and rape female inmates.

126.    This conduct amounts to deliberate indifference to the rights of JANE DOE and

other female inmates and shocks the conscience.

127.    ACTING WARDEN MICHAEL PALLARES and the supervisory defendants knew that RODRIGUEZ and other correctional officers were engaging in these acts and knew the conduct would deprive JANE DOE #3 and others of their rights.

128.    As a direct and proximate result of said acts and/or omissions by Defendants ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20, JANE DOE #3 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

129.    The aforementioned acts and/or omissions of said Defendants were willful, wanton, malicious and done with conscious or reckless disregard for the rights and safety of JANE DOE, thereby entitling plaintiff to an award of exemplary and punitive damages according to proof.

## FIFTH CLAIM FOR RELIEF

### "California Gender Violence Law"

### (Cal. Civ. Code § 52.4)

*Against RODRIGUEZ and DOES 1 to 20*

130.    Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 129, as though fully set forth herein.

131.    The actions of RODRIGUEZ, in sexually harassing, sexually assaulting, and raping JANE DOE #3 constitute "gender violence" and sex discrimination under Civil Code § 52.4, as those acts constitute criminal offenses under state law and involved physical invasions of a sexual nature under coercive conditions. RODRIGUEZ has been charged for his criminal conduct relating to JANE DOE #3.

132.    RODRIGUEZ touched JANE DOE #3 in a sexual manner on multiple occasions and engaged in sexual conduct for his own sexual gratification. RODRIGUEZ performed these acts for the purpose of humiliating, degrading and demeaning JANE DOE #3.

133.    ACTING WARDEN MICHAEL PALLARES and other supervisory defendants

20

knew and had been made aware through prior complaints that female inmates were being sexually assaulted by RODRIGUEZ at BPH, but failed to remove him from the BPH position, failed to monitor his actions at the BPH location and failed to install video cameras at the BPH Hearing Office to monitor that location.

134. As a direct and proximate result of said acts by Defendant RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20, JANE DOE #3 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, past and future mental and emotional distress, costs and attorneys' fees.

135. Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

**SIXTH CLAIM FOR RELIEF**

**"Tom Bane Civil Rights Act"**

**(California Civil Code § 52.1)**

*Against RODRIGUEZ, PALLARES, STATE OF CALIFORNIA, CDCR and DOES 1 to 20*

136. Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 135, as though fully set forth herein.

137. Defendant RODRIGUEZ sexually harassed, sexually assaulted and raped JANE DOE #3, through the use of coercion, intimidation and threats, with deliberate indifference or reckless disregard of rights protected by the Eighth and Fourteenth Amendments to the U.S. Constitution as well as California Constitution, Article I, § 17 and California Civil Code § 52.4.

138. Defendant DOES 1 to 20 failed to intercede in Defendant RODRIGUEZ's sexual harassment, sexual assaults and rape of Plaintiff JANE DOE #3, with deliberate indifference or reckless disregard of rights protected by the Eighth and Fourteenth Amendments to the U.S. Constitution as well as California Constitution Article I, § 17 and California Civil Code § 52.4.

139. Defendants STATE OF CALIFORNIA and CDCR failed to train its custodial officers in the recognition and prevention of staff sexual misconduct as required by Department

21

of Corrections and Rehabilitation Operations Manual, Article 44, Section 54040.7 "Detection, Notification and Reporting," California Code of Regulations, Title 15, Section 3401.5(c), and the Sexual Abuse in Detention Act ("SADEA") ( See Penal Code Sections 2635-2643).

140.    Defendants STATE OF CALIFORNIA and CDCR have policies, customs and practices that permit employees with prior complaints of staff sexual misconduct to summon female inmates to areas within CCWF that have no video monitoring, even though there was a known and obvious risk of female inmates having their constitutional and statutory rights violated.

141.    Policymakers of Defendants STATE OF CALIFORNIA and CDCR have failed and refused to provide video monitoring in locations where male employees have access to female inmates, even though there was a known and obvious risk of female inmates having their constitutional and statutory rights violated.

142.    PALLARES, as "Hiring Authority" failed to implement CCFW's PREA regulations and failed to initiate Internal Affairs investigations even though multiple inmates had complained that RODRIGUEZ was engaging in staff sexual misconduct as defined under PREA and those complaints had been forwarded to PALLARES.

143.    Plaintiff JANE DOE #3 was harmed by Defendants' actions and omissions and their conduct was a substantial factor in causing JANE DOE #3's harm

144.    RODRIGUEZ's actions constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages according to proof.

145.    Defendants STATE OF CALIFORNIA and CDCR are vicariously liable, through the principles of *respondeat superior* and pursuant to Cal. Gov. Code §§ 815.2(a) and 820(a), for injuries proximately caused by the acts and omissions of their employees acting within the scope of their employment.

146.    Plaintiff JANE DOE #3 was injured as a direct and proximate result of Defendants' actions and inactions, entitling her to receive compensatory, treble damages and civil penalties.

147.    Plaintiff JANE DOE #2 is also entitled to an award of reasonable attorneys' fees

22

and costs pursuant to Civil Code Section 52.1 and as allowed by law.

**SEVENTH CLAIM FOR RELIEF**

**"Sexual Assault and Battery"**

**(California Common Law/Civ. Code § 1708.5)**

*Against RODRIGUEZ and DOES 1 to 20*

148.    Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 147, as though fully set forth herein.

149.    RODRIGUEZ acted with the intent to cause a harmful or offensive contact by sexually assaulting, battering and raping JANE DOE #3 while she was under his care, custody and control as an inmate at CCWF.

150.    RODRIGUEZ caused an imminent fear of sexual assault and battery by summoning JANE DOE #3 to the BPH Hearing Office, informing her there were no cameras present and telling her that he was going to have sex with her or he would retaliate, and sexually offensive contact with JANE DOE #3 resulted.

151.    CDCR's PREA definitions clarify that the "legal concept of 'consent' does not exist between staff and offenders; any sexual behavior between them constitutes sexual misconduct and shall subject the staff member to disciplinary action and/or to prosecution under the law." See Section 54040.3, "Definitions".

152.    JANE DOE #3 did not consent to being touched by RODRIGUEZ and did not consent to being sexually assaulted and raped while in custody by RODRIGUEZ.

153.    JANE DOE #3 was harmed by RODRIGUEZ's conduct.

154.    As a direct and proximate result of said acts by Defendant RODRIGUEZ, JANE DOE #2 suffered injuries and damages as alleged herein and to which JANE DOE #3 is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress.

155.    Defendant RODRIGUEZ's acts constituted oppression, fraud and/or malice thereby entitling Plaintiff to an award of exemplary and punitive damages against Defendant RODRIGUEZ according to proof.

## EIGHTH CLAIM FOR RELIEF

### "Intentional Infliction of Emotional Distress"

### (California State Common Law)

*Against RODRIGUEZ, PALLARES, and DOES 1 to 20*

156.    Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 155, as though fully set forth herein.

157.    Defendant RODRIGUEZ engaged in extreme and outrageous conduct by repeatedly subjecting JANE DOE #3 to non-consensual sexual acts, which caused JANE DOE #3 to suffer severe mental and emotional distress.

158.    Defendant DOES 1 to 20 engaged in extreme and outrageous conduct, including by failing to protect JANE DOE #3, integrally participating in, and/or aiding and abetting Defendant RODRIGUEZ's sexual harassment, sexual assaults and rape of Plaintiff JANE DOE #3.

159.    Defendants RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 actions and inactions constituted oppression, fraud and/or malice resulting in great harm and thereby entitling JANE DOE #3 to an award of punitive damages against all individually named Defendants.

160.    Plaintiff JANE DOE #2 was injured as a direct and proximate result of Defendants RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES and DOES 1 to 20 actions and inactions, entitling her to receive compensatory damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress.

## NINTH CLAIM FOR RELIEF

### "Negligence"

### (California State Common Law)

*Against RODRIGUEZ, PALLARES, and DOES 1 to 20*

161.    Plaintiff JANE DOE #3 re-alleges and incorporates by reference paragraphs 1 through 160, as though fully set forth herein.

24

162.    Defendants RODRIGUEZ, ACTING WARDEN MICHAEL PALLARES, and DOES 1 to 20 owed a duty to protect Plaintiff JANE DOE #3 and breached that duty by allowing RODRIGUEZ to sexually assault and rape her while incarcerated at CCWF.

163.    Defendants ACTING WARDEN MICHAEL PALLARES and Defendant DOES 1 to 20 failed to ensure Plaintiff was free from sexual violence caused by their subordinates, including:

a.    by failing to observe and reported multiple instances of suspicious conduct by RODRIGUEZ towards female inmates at A Yard work exchange and the BPH offices;

b.    by allowing and assigning RODRIGUEZ to work the BPH assignment at CCWF, after having received multiple complaints from female inmates complaining of sexual misconduct by RODRIGUEZ at BPH, and knowing that the BPH Hearing Office had no video surveillance;

c.    by the repeated failures of DOES 1 to 20 to report RODRIGUEZ for sexual abuse of inmates when each had seen RODRIGUEZ taking female inmates into the BPH Hearing Office for extended periods of time with no lawful or legitimate reason, and for not questioning why RODRIGUEZ was summoning female inmates to the BPH office with no legitimate or penological justification;

d.    by granting RODRIGUEZ overtime shifts at BPH knowing female inmates had complained of sexual assault at that location and knowing there was no video monitoring in the BPH Hearing Office; and,

e.    by not supervising RODRIGUEZ or other subordinate correctional officers to ensure they are complying with CDCR's PREA policies regarding the detection and reporting of staff sexual misconduct.

164.    Plaintiff JANE DOE #3 was injured as a direct and proximate result of Defendants' actions to which JANE DOE #3 is entitled to recover damages for past and future medical and psychological care, past and future pain and suffering, and past and future mental and emotional distress.

**PRAYER FOR RELIEF**

25

WHEREFORE, Plaintiff JANE DOE #3 seeks judgment as follows:

1.     For an award of nominal, compensatory, general and special damages against Defendants according to proof at trial;

2.     For an award of exemplary/punitive damages against Defendants RODRIGUEZ, PALLARES, and DOES 1 to 20, in an amount sufficient to deter and to make an example of them, because their actions and/or inactions were motivated by evil motive or intent, involved reckless or callous indifference to constitutional or statutory rights, and constituted oppression, fraud or malice resulting in great harm;

3.     For an award of actual damages, treble damages, civil penalties and any other available relief against Defendants RODRIGUEZ, PALLARES and DOES 1 to 20;

4.     For an award of reasonable attorneys' fees and costs, pursuant to 42 U.S.C. § 1988, Cal. Civ. Code § 52.1, Cal. Civ. Code § 52.4, Cal Code of Civ. Proc. § 1021.5, and any other statute that may be applicable; and,

5.     For an award of any other relief, as the Court deems fair, just and equitable.

Dated: June 6, 2023                                    Respectfully Submitted,


                                                       By: /s/ Robert Chalfant
                                                       Robert Chalfant
                                                       Law Office of Robert Chalfant

                                                       Attorney for Plaintiff
                                                       JANE DOE #3


## JURY TRIAL DEMAND

A JURY TRIAL IS DEMANDED on behalf of Plaintiff JANE DOE.

Dated: June 6, 2023                                    Respectfully Submitted,


                                                       By: /s/ Robert Chalfant
                                                       Robert Chalfant
                                                       Law Office of Robert Chalfant

                                                       Attorney for Plaintiff
                                                       JANE DOE #3

26